**Ellen Leslie KLEINERT, Mother and Next Friend of Wes Ian Kleinert, Petitioner,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–211V.

United States Claims Court.

Jan. 24, 1992.

---

Michael R. Hugo, Boston, Mass., for petitioner.

Catharine Reeves Oster, with whom were Asst. Atty. Gen. Stuart M. Gerson, Helene M. Goldberg, Director, and John Lodge Euler, Deputy Director, Washington, D.C., for respondent.

## OPINION

ANDEWELT, Judge.

This is a vaccine action brought pursuant to the National Childhood Vaccine Compensation Act of 1986, as amended, 42 U.S.C. §§ 300aa–1 *et seq.* (West Supp.1991) (the Vaccine Act). Petitioner, Ellen Leslie Kleinert, alleges that her son, Wes Ian Kleinert, born on November 24, 1980, suffered injuries compensable under the Vaccine Act as a result of a DPT (diphtheria, pertussis, and tetanus) vaccine administered on February 24, 1981. The special master granted compensation in an August 30, 1991, decision. Pursuant to 42 U.S.C. § 300aa–12(e), respondent filed a motion in this court seeking review of two aspects of the special master's decision. The court may set aside the special master's findings of fact or conclusions of law only if the court finds them "to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). For the reasons set forth below, respondent's motion is denied and the special master's award is affirmed.

## I.

■ Respondent first objects to the special master's award of $3,000 per year for family counseling through the date West reaches age 21. The special master explained that "[g]iven the behavioral prob-

lems that Wes has demonstrated and the reports of Dr. Gadia and Dr. Campbell, I will allow ... $3,000 per year for family counseling (which Dr. Campbell has written is solely for Wes' benefit) through age twenty-one...." *Kleinert v. Secretary, HHS*, No. 90–211V, slip op. at 2 (Cl.Ct. Aug. 30, 1991). Since Wes is now 11 years old, this counseling would last for ten years. Respondent contends that the special master's award of compensation should be reduced because the record before the court does not support family counseling for in excess of two years. But, upon review, the record does contain adequate support for the special master's decision.

Dr. Brian Campbell, a psychologist, addressed the need for family counseling, as follows:

> [I]t is important that Mr. and Mrs. Kleinert receive specific instructions on how to deal with Wes behaviorally. This parent training and counseling are necessary in order that [the] treatment program that I recommend will be carried out at home as well as in school. This type of continuity of programming is essential in order to reduce maladaptive behaviors and increase adaptive skills.

Although Dr. Campbell does not specify a duration for family counseling, petitioner submitted a "Life Care Plan" which recommends that such family counseling continue until Wes reaches the age of 21. This plan apparently was prepared by experts in rehabilitation planning who evaluated Wes' needs based on an interview with petitioner and a review of Wes' medical and educational records and diagnoses. At oral argument, respondent acknowledged that such a life care plan prepared by experts is probative evidence of an individual's life care needs.

There is no competing life care plan in the record and there is no other record evidence to suggest that counseling for a full ten years would be excessive, unnecessary, or not operate to Wes' benefit. In this context, this court cannot conclude that "the record as a whole" does not sup-

port the special master's counseling award. *See* 42 U.S.C. § 300aa–13(a)(1).[1]

## II.

The second aspect of the special master's decision to which respondent objects is the grant of $14,000 for housing modifications. The special master stated: "In light of Dr. Campbell's statement, I will allow the full $14,000 which is a reasonable amount in light of my experience with other cases." *Kleinert,* slip op. at 3–4. Respondent offers two arguments in support of vacating this award, but neither is persuasive.

▪ First, respondent argues that the special master's award for housing modifications is inconsistent with the evidence in the record. Review of the record indicates that the special master's award of "the full $14,000" refers to $14,000 in home costs as detailed in the life care plan submitted by petitioner. The life care plan allocates $14,000 for the following "Home Costs":

Additional Space—Enclose Patio

Thermostatic Controls on Shower and Tub

Intercom and Remote Interlock

Door Handles

Emergency Call System

The special master's determination to award the full amount "in light of Dr. Campbell's statement" apparently refers to Dr. Campbell's recommendation that petitioner's home be modified to create an "adaptive room." Dr. Campbell stated:

I have visited the Kleinert's home, and I feel that certain modifications should be made there. Specifically, I have discussed the possibility with the parents of creating a quiet room for Wes where he could go to study and where the level of stimulation would be minimal. Given his Autistic Disorder, as well as his Attention Deficit Disorder (See Psychological

Report), such an adaptive room would help Wes focus on his school work and also help lower his level of autonomic arousal.

Respondent complains that the life care plan did not supply any specific construction plans or break down the $14,000 into the various components of "Home Costs." But the life care plan was apparently prepared by experts who presumably were diligent in estimating these costs. In addition, the special master relied upon his own experience in other cases. A total of $14,000 would not seem unreasonable for these home costs and respondent has not presented any evidence in the record to suggest that the sum is unreasonable.

In addition, respondent argues that, among the modifications, only the enclosure of the patio might relate to the adaptive room mentioned in Dr. Campbell's recommendation. While the life care plan does not specify which, if any, of these modifications were intended to be part of the proposed adaptive room, it would appear that at least some (*i.e.,* the intercom and remote interlock, door handles, and emergency call system) likely would be. But, even if some or all were not, there is support in the record for the $14,000 award. The life care plan recommends these modifications and the record supports the need for them in that it indicates that Wes exhibits a wide range of maladaptive behaviors, requires round-the-clock supervision, and is prone to hurting himself. Given this evidence, it was not arbitrary, capricious, or an abuse of discretion for the special master to order compensation for all of the home cost items.

▪ Second, respondent argues that even if the creation of an adaptive room is consistent with the evidence in the record,

---

1. Section 300aa–13(a)(1) provides:
    Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—
        (A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition ..., and
        (B) that there is not a preponderance of the evidence that the illness, disability, injury,

condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.
The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.

the $14,000 award nevertheless should be set aside as beyond the authority of the special master, *i.e.*, that the award is *per se* unreasonable. Respondent argues that Wes is fully ambulatory, is not physically handicapped, and, as a result, is not entitled to any compensation for housing modifications. In addition, respondent contends that Congress intended 'to permit compensation for housing modifications only where it is necessary to avoid institutionalization and there is no issue of institutionalization here.

But the unambiguous wording of the statute does not include the distinctions and limitations on compensation that respondent proposes. The Vaccine Act provides, in pertinent part:

Compensation awarded under the Program ... shall include the following:

(1)(A) Actual unreimbursable expenses incurred from the date of the judgment awarding such expenses and reasonable projected unreimbursable expenses which—

* * * * * *

(I) have been or will be for diagnosis and medical or other remedial care *determined to be reasonably necessary,* or

(II) have been or will be for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities *determined to be reasonably necessary.*

42 U.S.C. § 300aa–15(a) (emphasis added).

Thus, the pertinent test is whether the projected unreimbursable expenses are "reasonably necessary" for the needs specifically listed in Section 15(a). There is no distinction made between compensation for physical handicaps and compensation for other handicaps, *i.e.*, there is no suggestion, for example, that the remedial care, rehabilitation, special equipment, and facility needs of the mentally handicapped are to be treated under a different, less generous standard than the needs of the physically handicapped. Similarly, there is no indication that the costs of housing modifications related, for example, to remedial care or rehabilitation can be compensated only when the alternative to expending those costs is institutionalization.

On the institutionalization issue, to support its argument to the contrary, respondent relies upon one paragraph of legislative history contained in a report issued by the House Committee on Energy and Commerce. But the bill provision discussed in that paragraph is not the provision that ultimately became Section 15(a) of the Vaccine Act, but rather the provision that ultimately became Section 15(c). Section 15(c) provides that "[t]he amount of any compensation for residential and custodial care and service expenses under subsection (a)(1) of this section shall be sufficient to enable the compensated person to remain living at home." 42 U.S.C. § 300aa–15(c). Hence, Section 15(c) does not involve all of the areas of compensation listed in Section 15(a) but only residential and custodial care and service expenses.

With respect to these particular areas, Section 15(c) clearly reflects concern that individuals impaired as a result of the administration of a vaccine generally have the option of living at home rather than being institutionalized. By requiring that the amount of an award under these particular criteria be *"sufficient* to enable the compensated person to remain living at home" (emphasis added), Section 15(c), in effect, would generally place a floor on compensation awarded for these particular items. The total compensation generally should be "enough" or "adequate" to permit home care. (*Webster's New Collegiate Dictionary,* 1164 (1977), lists "enough" and "adequate" as synonyms for "sufficient.") However, Section 15(c) does not, at the same time, place a ceiling, *i.e.*, an upward limit, on compensation that may be awarded. It does not provide that compensation otherwise determined to be "reasonably necessary" under Section 15(a) should be withheld simply because the compensation is in excess of the *minimum* amount that

would be "adequate" to avoid institutionalization. In sum, the wording of Section 15(c) suggests a compensation floor, rather than a ceiling, and does not indicate any intent to lower a compensation award otherwise found appropriate under Section 15(a).

In the instant action, Dr. Campbell concluded that Wes suffered from autistic and attention deficit disorders and that establishing an adaptive room would help address autonomic arousal. In light of that evidence, and considering the costs involved and the potential benefits to Wes, the special master did not commit reversible error in determining that such compensation was "reasonably necessary" under Section 15(a).

In the absence of any ambiguity in the statutory language, it is not appropriate to resort to the legislative history. *See Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). But in any event, the paragraph of legislative history upon which respondent relies does not demand a different result. The paragraph provides:

> *Residential and Custodial Care and Service.*—Any compensation award for residential and custodial care and service expenses is to be sufficient to allow the compensated person to remain living at home. This provision is not intended to prevent injured persons from receiving appropriate institutional care if they and their families request such services; neither is it intended to provide for the payment of family living expenses, the purchase of a home, or the construction of a major addition. The Committee intends that this provision allow for in-home medical, rehabilitative, and custodial care, and such modifications to existing physical facilities (such as bathroom facilities) as are necessary to ensure that injured persons are not required to be institutionalized for purely economic reasons.

H.R.Rep. No. 908, 99th Cong., 2d Sess. 1, 21 (1986), *reprinted in* U.S.Code Cong. and Admin.News 6287, 6344, 6362. This explanation is consistent with interpreting Section 15(c) as above. The paragraph does not demonstrate any unambiguous intent that Section 15(c) be used to reduce awards that otherwise would be available under Section 15(a). To the extent that this paragraph indicates that there should be a limit on the types of costs that should be compensated pursuant to Section 15(c) when seeking to provide an alternative to institutionalization, that limit is not reached here. The modest expenses associated with the enclosing of a patio do not involve and are not equivalent to "the construction of a major addition."

### Conclusion

For the reasons set forth above, the court affirms the special master's award of compensation for family counseling and housing modifications. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.